# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

**LARRY SAMMS,**

                                                     **Case No.: 1:15-CV-02741-JSR**

                     **Plaintiff,**

               **-against-**

**ABRAMS, FENSTERMAN,**
**FENSTERMAN, EISMAN,**
**FORMATO, FERRARA & WOLF,**
**LLP**

                     **Defendant.**

-------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................................1

II.   PROCEDURAL HISTORY.........................................................................................1

III.  STATEMENT OF FACTS ..........................................................................................4

IV.   ARGUMENT ................................................................................................................9

    A. THE RULE 56 STANDARD FOR SUMMARY JUDGMENT.................................10

    B. DEFENDANT VIOLATED THE FDCPA BY PROSECUTING A COLLECTION
    LAWSUIT IN AN IMPROPER VENUE AND BY DEMANDING ATTORNEY'S FEES
    WHEN NONE WERE ALLOWED ..........................................................................11

        1. The public policy of the FDCPA ...............................................................11

        2. Preliminary issues under the FDCPA .......................................................13

        3. This Court has already ruled that the now-undisputed facts, set forth in the operative
        complaint, state claims for Defendant's violations of the FDCPA...................................13

            a)   Defendant violated the FDCPA by prosecuting the collection lawsuit in an
                improper venue………………………………………………………………13

            b)   Defendant violated the FDCPA by demanding attorney's fees in the
                underlying collection lawsuit, when none were allowed by contract or law..14.

    C. DEFENDANT VIOLATED THE GBL BY DEMANDING ATTORNEY FEES WHEN
    NONE WERE ALLOWED .........................................................................................15

V.    CONCLUSION..............................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................11

*Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993)...........................................12

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.1991)..........................................................................11

*Calderone v. U.S.*, 799 F.2d 254 (6th Cir. 1986) .........................................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................9, 10

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir.1998) .........................................................11

*Diaz v. Portfolio Recovery Services Assoc. LLC., 10 CV 3920* MKB CLP, 2012 WL 1882976 at *1 (E.D.N.Y. May 24, 2012) ....................................................................................................17

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130 (2d Cir.2009) .................................................12

*Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85 (2d Cir. 2008) ................................................12

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir.2002) .....................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corps.*, 475 U.S. 574 (1986) .................................11

*Midland Funding, LLC v. Giraldo*, 39 Misc. 3d 936 (Dist. Ct. 2013)....................................17, 18

*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir.1989) .......................................12

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir.1996) ...................................................................12

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 4079424, at *1 (S.D.N.Y. July 6, 2015) ..................................... *passim*

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 6437493, at *1 (S.D.N.Y. Oct. 21, 2015)("*Samms II*") ............... *passim*

*San Pedro v. U.S.*, 79 F.3d 1065 (11th Cir. 1996) ......................................................................11

*Sledge v. Kooi*, 564 F.3d 105 (2d Cir. 2009) ..............................................................................10

*Stutman v.Chemical Bank,* 95 N.Y.2d 24 (2000)........................................................................15

*Sykes v. Mel Harris and Assoc, LLC.* 757 F.Supp.2d 413 (S.D.N.Y 2010) .................................17

## Statutes

15 U.S.C. § 1692 *et seq*.......................................................................................................... *passim*

15 U.S.C.A. § 1692(a) ...............................................................................................................11

15 U.S.C. § 1692a(3) .................................................................................................................13

15 U.S.C. § 1692a(5) ...........................................................................................................13

15 U.S.C. § 1692a(6) ...........................................................................................................13

15 U.S.C. § 1692e ...........................................................................................................12, 15

15 U.S.C. § 1692e(2)(A) .....................................................................................................15

15 U.S.C. § 1692f(1) ...........................................................................................................15

N.Y. Gen. Bus Law § 349 *et seq*..........................................................................................1

N.Y. GBL § 349(a) ...............................................................................................................15

**<u>Rules</u>**

Fed. R. Civ. P. 56(c) ..................................................................................................9, 10, 11

## I.    INTRODUCTION

Plaintiff Larry Samms ("Plaintiff" or "Mr. Samms") hereby submits this memorandum of law in support of his motion for summary judgment against Defendant Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP ("Abrams" or "Defendant") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"),  and N.Y. Gen. Bus Law § 349 *et seq* ("GBL").

## II.    PROCEDURAL HISTORY

Plaintiff filed the original complaint in this action on April 8, 2015, alleging violations of the FDCPA, GBL, and New York Judiciary Law § 487 ( the "Judiciary Law"). *See* [DE 1, the original complaint]. Plaintiff subsequently filed two amended complaints to correct minor issues. *See* [DE 11, the First Amended Complaint ("FAC")] and [DE 13 and 18, the Second Amended Complaint ("SAC")]. [DE 13] and [DE 18] are identical. [DE 18] was only re-submitted to correct an ECF filing error with [DE 13].

On June 5, 2015, Defendant filed a motion for judgment on the pleadings, seeking to dismiss Plaintiff's SAC in its entirety. *See* [DE 15]. The parties briefed Defendant's motion. *See* [DE 17, Defendant's memorandum of law]; [DE 19, Plaintiff's memorandum of law in opposition]; and [DE 20, Defendant's reply memorandum of law in support].

On July 7, 2015, this Court ruled on the motion to dismiss: 1) denying Defendant's motion to dismiss Plaintiff's FDCPA claims for filing suit in an improper venue; 2) denying Defendant's motion to dismiss Plaintiff's FDCPA claims for improperly seeking attorney's fees in the wherefore clause of the underlying collections lawsuit complaint; 3) granting Defendant's motion to dismiss Plaintiff's FDCPA claims for misrepresentation of the amount of the debt; and 4) granting Defendant's motion to dismiss Plaintiff's GBL and Judiciary Law claims. *Samms v.*

*Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 4079424, at *1 (S.D.N.Y. July 6, 2015) ("*Samms I"*).

On July 31, 2015, Plaintiff filed a Third-Amended Complaint ("TAC"). *See* [DE 22]. The TAC added several paragraphs of factual allegations in support of Plaintiff's GBL claim, to further establish that Defendant's conduct was consumer-oriented and that Defendant "routinely filed collections lawsuits against consumers, including Mr. Samms, demanding judgment for attorney's fees in the "wherefore" of the complaint, when none were allowed by contract or law". *See* [DE 22, ¶¶39-50]. The TAC also removed Plaintiff's Judiciary Law claim and FDCPA claim for misrepresentation of the amount of the debt, since those claims were dismissed in the July 6, 2015 Order on Defendant's motion to dismiss. *See* [DE 22].

On August 7, 2015, Defendant's counsel contacted Plaintiff regarding *inter alia* an anticipated motion to strike Plaintiff's TAC, or, in the alternative, motion for judgment on the pleadings. Pursuant to Your Honor's individual practice rules, the parties contacted Your Honor about the dispute via telephone. Your Honor directed the parties to file formal motions by August 21, 2015.

The parties briefed Plaintiff's motion to amend and Defendant's motion to dismiss. *See* [DE 24-26, Plaintiff's motion to amend]; [DE 27-29, Defendant's motion to dismiss]; [DE 30-31, Plaintiff's opposition to Defendant's motion to dismiss]; [DE 32-35 Defendant's opposition to Plaintiff's motion to amend]; [DE 36, Plaintiff's reply in support of the motion to amend]; [DE 37-38 Defendant's reply in support of the motion to dismiss]; [DE 39-40, Plaintiff's sur-reply in opposition to Defendant's motion to dismiss].

On October 21, 2015, Your Honor ruled on the parties' competing motions: 1) granting Plaintiff's motion and 2) denying Defendant's motion. *Samms v. Abrams, Fensterman,*

*Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 6437493, at *1 (S.D.N.Y. Oct. 21, 2015)("*Samms II")*. In particular, Your Honor granted Plaintiff leave to amend the complaint to state a claim for Defendant's violation of the GBL (previously dismissed in *Samms I*):

> The purpose of these additional allegations is to revive plaintiff's dismissed claim under Section 349 of the GBL, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." The Court dismissed this claim because plaintiff had failed to "demonstrate that the [challenged] acts or practices [had] a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25 (N.Y.1995); *see* Mem. Order at 11, ECF No. 21. The Court should grant plaintiff's motion only if the additional allegations would cure this defect-that is, if his amendments would not be "futile." *See Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008); *Bank of New York v. Sasson,* 786 F.Supp. 349, 352 (S.D.N.Y.1992).
> Plaintiffs proposed amendments would not be futile. Indeed, several courts have previously concluded that practices similar to those in the new allegations support claims under Section 349. *See, e.g., Campbell v. MBI Associates, Inc.,* 2015 WL 1543215 at *18 (E.D.N.Y.2015); *Fritz v. Resurgent Capital Services, LP,* 955 F Supp.2d 163, 173–74 (E.D.N.Y.2013); *Diaz v. Portfolio Recovery Associates,* 2012 WL 1882976 at *1 (E.D.N.Y.2012); *Sykes v. Mel Harris and Associates, LLC,* 757 F.Supp.2d 413, 428 (S.D.N.Y.2010).

*Samms II*, 2015 WL 6437493, at *3.

Plaintiff filed the (now operative) 3rd Amended Complaint ("TAC") on October 26, 2015. *See* [DE 44]. In subsequent telephone rulings, Your Honor allowed discovery to continue on the sole issue of whether Defendant's conduct is "consumer oriented" as contemplated by the GBL, and as alleged in the TAC. In addition, Your Honor directed Plaintiff to file a motion for summary judgment by December 2, 2015, after the completion of said discovery.

On November 30, 2015, the parties contacted Your Honor's chambers to: 1) inform that Defendant's answers regarding the "consumer-oriented" discovery were still incomplete; and 2) request an extension until December 9, 2015 for Plaintiff to file his motion for summary judgment. Your Honor granted Plaintiff's request for an extension and directed Defendant to

produce. On December 9, 2015, the parties contacted Your Honor via telephone to: 1) inform that Defendant's answers regarding the "consumer-oriented" discovery were still incomplete; and 2) request leave for Plaintiff to supplement his motion for summary judgment, upon receipt of Defendant's revised and completed discovery answers. Plaintiff's request is still pending a resolution. As such, Plaintiff files this motion for summary judgment, which he may seek to supplement, if the Court allows, upon receipt of Defendant's revised  and completed discovery answers.

### III.    STATEMENT OF FACTS

The following facts correspond to Plaintiff's Local Rule 56.1 Statement of Material Facts for Summary Judgment ("Pl. 56.1"), based on exhibits attached to the corresponding December 9, 2015 Declaration of Ahmad Keshavarz ("Keshavarz Decl"). Both documents are filed in support of Plaintiff's motion for summary judgment.

Abrams is a law firm that regularly collects consumer debts alleged to be due to another, and is a debt collector pursuant to the FDCPA, 15 U.S.C. §1692 *et seq*. ¶¶ 2-3. On or about April 9, 2014, Abrams electronically filed a summons and verified complaint ("the lawsuit" or "the collection lawsuit") on behalf of its client Bishop Charles W. Maclean Episcopal Nursing Home ("the nursing home"), seeking to collect a putative debt from Plaintiff. Pl. 56.1, ¶1 [1].

The lawsuit alleged that Mr. Samms owed a debt regarding a stay at the nursing home. ¶4. Thus, the putative debt was an obligation incurred primarily for family, personal or household purposes. ¶6. The lawsuit sought to collect *inter alia* $21,000, plus "[t]he cost, disbursement and attorney's fees of this action, together with such other and further relief as this Court may deem just, proper, and equitable". ¶5.

---

[1] Hereinafter, the Statement of Facts will simply cite to the ¶ number of Pl. 56.1.

The lawsuit was filed in Westchester County, based on an assertion that Plaintiff resided at the "Royal Regency Hotel" located at "165 Tuckahoe Road, Yonkers, New York 10710". ¶¶7-8. However, at the time the collection lawsuit was filed, Mr. Samms did not reside in Westchester County nor at the "Royal Regency Hotel". ¶9. Rather, for more than 30 years, Mr. Samms resided (and still resides) in his home in the Bronx, located at 835 Jennings Street, Bronx, New York 10459. ¶10.

If Abrams had performed a meaningful attorney review of Mr. Samms' account prior to filing suit on April 9, 2014, it would have realized that Mr. Samms did not reside in Westchester County nor at the "Royal Regency Hotel" located at "165 Tuckahoe Road, Yonkers, New York 10710", because months before filing suit it discovered (or should have discovered) that Mr. Samms did not live at that address.  ¶¶11-13. Indeed, on or around January 15, 2014, Abrams sent Mr. Samms a collection letter at the address "165 Tuckahoe Road, Yonkers, New York 10710" ("the January 15, 2014 letter"). ¶12. However, that letter was returned to Abrams: "Return to Sender". ¶13.

Moreover, even if Abrams did not know that it had filed suit in a distant forum when it filed the collection lawsuit on or about April 9, 2014, Abrams was on actual notice that it filed suit in a distant venue by the time it received return of the affidavit of service. ¶14. For example, on or around April 22, 2014, less than two weeks after it filed the collection lawsuit in Westchester County, Abrams sent Mr. Samms another collection letter, this one to his correct address: 835 Jennings Street, Bronx, NY 10459. ¶15. Further, Melanie Wiener, Abram's corporate representative and fact witness, stipulated that Mr. Samms lived at his Bronx address as of April 22, 2014, the date of their second collection letter to Mr. Samms.  ¶16 *citing to Keshavarz Decl.* [Exhibit P, Wiener Tr. pp. 58:08-58:11] ("Q: Okay. When you sent the second

collection letter, you knew he lived in the Bronx, right? A: Yes.") In addition, on or about April 23, 2014, a process server, hired by Abrams to serve Mr. Samms at "165 Tuckahoe Road, Yonkers, New York 10710", failed to serve Mr. Samms at that incorrect address, noting:

> SPOKE TO DESK CLERK WHO STATED THE DEFENDANT WAS UNKNOWN. HE STATED HE WAS NOT AN EMPLOYEE THERE AND WAS NOT A GUEST AT THE PREMISES.

¶17.

Subsequently, on or about June 26, 2014, Abrams attempted to serve the collection lawsuit on Mr. Samms, at the address: "835 Jennings Street, Bronx, NY 10459." ¶18. When Abrams ultimately filed the affidavit of service in the collection lawsuit, on or about June 27, 2014, the affidavit itself said that Mr. Samms had a "residence" at 835 Jennings Street, Bronx, NY 10459." ¶19. Further, on or around August 1, 2014, Abrams sent a letter to Mr. Samms to his correct address (in the Bronx), stating that if he did not answer the collection lawsuit (based in Westchester) Abrams would take a default judgment "for the relief sought in the complaint". ¶20.

On September 2, 2014, Abrams signed an application for default judgment against Mr. Samms, in the collection lawsuit (in Westchester County). ¶21.The default judgment application itself (in Westchester County) stated that Mr. Samms "resided at 835 Jennings Street, Bronx, NY 10459". ¶22. On September 15, 2014, Abrams obtained a default judgment against Mr. Samms in the collection lawsuit (in Westchester County). ¶23. The default judgment itself (in Westchester County) stated that Mr. Samms "resided at 835 Jennings Street, Bronx, NY 10459". ¶24. The Westchester County clerk entered judgment against Mr. Samms for $24, 532.50. ¶25.

At that point, on or about September 29, 2014, Mr. Samms filed a *pro se* Order to Show Cause to vacate the default judgment. ¶26. The Order to Show Cause application notified Abrams that Mr. Samms resided in Bronx County. ¶27. On or about November 14, 2014, Hon.

Mary H. Smith of the Supreme Court of the State of New York, IAS Part, Westchester County granted Mr. Samms' application and vacated the default judgment. ¶28. But still, Abrams did not dismiss the collection lawsuit, refile in the proper county, nor move to transfer venue to the proper county. ¶29. Rather, Abrams forced Mr. Samms to incur time, expense, and distress moving to transfer venue. ¶30.

On or about December 15, 2014, Mr. Samms filed an answer *pro se* in the collections lawsuit, asserting general denials and affirmative defenses based on improper venue, lack of jurisdiction and improper service. ¶31.Mr. Samms also filed a demand pursuant to CPLR 511(b) to try the action in Bronx County and retained an attorney to represent him in the collections suit and to file a motion to transfer venue to the Bronx, becoming contractually obligated to pay attorney's fees and costs. ¶¶32-33.  Mr. Samms is contractually liable to pay $4,860 his attorney in the state court collection lawsuit, Guy Fairstein, for time expended "in relation to Mr. Samms motion to change place of trial." ¶32.

On or about January 2, 2015, Mr. Samms served a demand in the collection lawsuit to change the place of trial from Westchester County to Bronx County, and on or about, February 11, 2015, Mr. Samms' attorney Guy Fairstein entered into a stipulation with Abrams, agreeing to change the venue. ¶¶34-35. On or about February 19, 2015, Hon. Mary H. Smith of the Supreme Court of the State of New York, IAS Part, Westchester County so ordered the parties' stipulation to change the place of trial and ordered the collection lawsuit transferred to Supreme Court, Bronx County. ¶36.

Abram's collection lawsuit also sought to collect amounts from Mr. Samms not expressly authorized by law or contract. ¶37. Abrams did not allege the nursing home had a contract with Mr. Samms, nor that Mr. Samms breached such a contract. ¶38. Instead, the first count of the

collection lawsuit alleges that Mr. Samms "accepted services rendered by" the nursing home; that the nursing home "always had an expectation of receiving payment from [Mr. Samms] for the care and services it rendered to her [sic]"; and that "by reason of the care and services rendered…there remains a due and owing…sum of $21,000.00". ¶39. The second count of the collection lawsuit alleges that Mr. Samms "has been unjustly enriched as a result of receiving care and services from [the nursing home] without making payment therefore". ¶40. Even though the causes of action do not provide for attorney's fees, the "Wherefore" clause of the collection lawsuit still demanded "judgment against [Mr. Samms for]…attorney's fees of this action". ¶41.

During the period of at least April, 2012 to May, 2015, Abrams routinely filed collections lawsuits against consumers, including Mr. Samms, demanding judgment for attorney's fees in the "wherefore" clause of the complaint, when none were allowed by contract or law. ¶42. During the period between April 8, 2012 and December 8, 2015, Abrams filed 147 collection lawsuits against consumers, including Mr. Samms, demanding judgment or attorney's fees in the "wherefore" clause of the complaint, when none were allowed by contract or law. ¶43. During the period between April 8, 2014 and December 8, 2015, Abrams filed 147 collection lawsuits against consumers, including Mr. Samms, demanding judgment or attorney's fees in the "wherefore" clause of the complaint, when none were allowed by contract or law. ¶44.

Defendant's actions (filing in a distant venue and seeking attorney's fees) have caused Mr. Samms damages. ¶48. First, Mr. Samms had private insurance that he believes should have covered all—or almost all—of the $21,000.00 sought by Abrams in the collection lawsuit. ¶45. But Mr. Samms is also very physically vulnerable and suffers from debilitating medical conditions. ¶49.

The collection lawsuit caused Mr. Samms emotional distress. ¶50. Stress from the collections lawsuit negatively affected Mr. Samms' thought process, ability to concentrate, and appetite. ¶51. Mr. Samms felt frustrated responding to the collection lawsuit's "baseless allegations". ¶52. Mr. Samms was also annoyed by the allegations in the collection lawsuit. ¶53. Mr. Samms felt anguish seeing the amounts Defendant sought to collect in the collection lawsuit (including the demand for attorney's fees"). ¶54.

Further, Mr. Samms was aggravated by having to defend the collection lawsuit in an improper distant venue. ¶55. Mr. Samms suffered embarrassment and distress defending the Defendant's collection lawsuit in a distant venue because as an overweight man suffering from lymphedema he had to hire "four people to carry me down the stairs and put me in a vehicle", and his son who is "just barely making it" had to take time off of work to drive him. ¶56. Further, when he had to travel to Westchester, Mr. Samms had to pay people to carry him up and down his stairs, which he found embarrassing because Mr. Samms does not like it when people sees the conditions he has to live in. ¶57.

## IV.    ARGUMENT

Plaintiff is entitled to summary judgment as to liability because there are no genuine issues of material fact left to be determined and the remaining issues can be decided as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Further, to a large extent, this Court has already ruled on all three of these substantive claims, remaining at bar.

Plaintiff's operative complaint contains three actionable claims: 1) a violation of the FDCPA for Defendant's prosecution of the underlying collection lawsuit in an improper venue; 2) a violation of the FDCPA for Defendant's demand for attorney's fees in the underlying

collection lawsuit, when none were allowed by contract or law; and 3) a violation of the GBL for

Defendant's demand for attorney's fees in the underlying collection lawsuit, when none were

allowed by contract or law. *See* [DE 44]. In *Samms I*, this Court ruled that Defendant's

prosecution of the underlying collection lawsuit in an improper venue, and demand for attorney's

fees in the underlying collection lawsuit, was a violation of the FDCPA (assuming such facts

were true, pursuant to the Fed. R. Civ. P. 12(c) standard). 2015 WL 4079424, at *2-5. In *Samms*

*II*, this Court ruled that Defendant's demand for attorney's fees in the underlying collection

lawsuit was a violation of the GBL (assuming such facts were true, pursuant to the Fed. R. Civ.

P. 15(a) standard). 2015 WL 6437493, at *3.

Therefore, Plaintiff's motion for summary judgment as to Defendant's liability under the

FDCPA and GBL should be granted, given that this Court has already considered the issues of

law brought forth by this motion, and given that Plaintiff can show that there are no genuine

issues as to any material fact.

## A.    THE RULE 56 STANDARD FOR SUMMARY JUDGMENT

 "Summary judgment is warranted when, after construing the evidence in the light most

favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no

genuine issue as to any material fact." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). *See*

Fed.R.Civ.P. 56(c).

Summary judgment is proper in this case because there is no genuine issue of any

material fact and because Plaintiff is entitled to judgment as a matter of law as to the issues

brought forth by this motion.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322,

106 S.Ct. 2548, 2552 (1986). This motion is based on the exhibits attached to the accompanying

Declaration of Ahmad Keshavarz and the accompanying Local Rule 56.1 Statement Of Material

Facts, which incorporates the same exhibits.  A plaintiff moving for summary judgment satisfies its burden by submitting summary judgment proof that establishes all elements of its cause of action as a matter of law.  *San Pedro v. U.S.*, 79 F.3d 1065, 1068 (11th Cir. 1996).  Plaintiff must show that no reasonable trier of fact could find other than for plaintiff.  C*alderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). A "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. *Anderson* 477 U.S. at 251. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Matsushita Elec. Indus. Co. v. Zenith Radio Corps*., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252.

## B.    DEFENDANT VIOLATED THE FDCPA BY PROSECUTING A COLLECTION LAWSUIT IN AN IMPROPER VENUE AND BY DEMANDING ATTORNEY'S FEES WHEN NONE WERE ALLOWED

### 1. The Public policy of the FDCPA.

Congress enacted the FDCPA in response to "evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C.A. § 1692(a).  The

purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Accordingly, Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S*., 74 F.3d 30, 34 (2d Cir.1996) (internal quotation marks omitted). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive collection practices." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989).

Congress designed the FDCPA to be enforced primarily through private parties – such as such as Mr. Samms– acting as "private attorneys general."  *See* S. Rep. No. 382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); *Jacobson v. Healthcare Fin. Servs*., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [Plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.").

The FDCPA is a strict liability statute.  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993) (''The FDCPA is a strict liability statute . . . and the degree of a defendant's culpability may only be considered in computing damages . . ."); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.2009), *cert. denied*, 130 S. Ct. 3333, 176 L. Ed. 2d 1223 (2010) ("To recover damages under the FDCPA, a consumer does not need to show

intentional conduct on the part of the debt collector.")

### *2. Preliminary issues.*

Abrams is a "debt collector" as defined under the FDCPA, 15 U.S.C. § 1692a(6), because it is a law firm that regularly collects consumer debts alleged to be due to another. Pl. 56.1 ¶¶ 2-3. Further, Abrams tried to collect a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5), because the alleged nursing home debt was incurred primarily for family, personal or household purposes. Pl. 56.1 ¶¶ 4-6. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3), because he was alleged to owe the putative "debt." *Id.*

### *3. This Court has already ruled that the now-undisputed facts, set forth in the operative complaint, state claims for Defendant's violations of the FDCPA.*

As discussed below, there are no issues of material facts as to whether Abrams prosecuted the underlying collection lawsuit against Plaintiff in an improper venue. Further, there is no issue of material fact as to whether Abrams demanded attorney's fees in the underlying collection lawsuit, when none were allowed by contract or law. Therefore Plaintiff is entitled to summary judgment as to Defendant's liability for both of those acts under the FDCPA.

### *a) Defendant violated the FDCPA by prosecuting the collection lawsuit in an improper venue.*

Abrams filed the underlying collection lawsuit in Westchester County, even though Mr. Samms resided (and still resides) in the Bronx. Pl 56.1 ¶¶1, 7-10.  Further, Abrams continued to prosecute the collection lawsuit in Westchester County after repeated notice (and undisputable knowledge) that Mr. Samms resided in the Bronx, rather than in Westchester County. *Id.* at ¶¶11-36.  Moreover, Abrams entered a default judgment against Mr. Samms in Westchester County

despite repeated notice (and undisputable knowledge) that Mr. Samms resided in the Bronx, rather than in Westchester County. *Id.* at ¶¶21-25.

This Court has already ruled that Defendant's filing of the collection lawsuit in a judicial district other than that, in which Plaintiff resides, taken as true, would violate the FDCPA:

> Samms' final claim under the FDCPA is that Abrams brought suit in a judicial district other than that in which he "reside[d] at the commencement of the action," in violation of Section 1692i(a)(2) .2 The SAC alleges that Samms resides, and has resided for the past thirty years, in the Bronx, SAC ¶ 6, but that Abrams nonetheless brought suit in Westchester County, id. ¶ 7. These allegations are plainly sufficient.

*Samms I*, 2015 WL 4079424, at *5.

The fact record undisputedly indicates that Defendant indeed filed the collection lawsuit in a judicial district (Westchester County) other than that in which Plaintiff resides (Bronx County). Pl 56.1 ¶¶1, 7-10. Moreover, the fact record undisputedly indicates that Defendant had reason to know that Plaintiff did not reside in Westchester, including before filing suit, but continued to prosecute the lawsuit in Westchester. *Id.* at ¶¶11-36. Therefore, Plaintiff is entitled to summary judgment as a matter of law for Defendant's said violation of the FDCPA.

***b) Defendant violated the FDCPA by demanding attorney's fees in the underlying collection lawsuit, when none were allowed by contract or law.***

This Court has already ruled that Defendant's demand for attorney's fees in the underlying collection lawsuit, taken as true, would violate the FDCPA:

> the Court finds that, taking the allegations in the SAC as true, an unsophisticated consumer reading the State Court Complaint could be left with the false impression that Abrams was legally entitled to recover an award of attorneys' fees in addition to the amount of the debt allegedly owed. This false impression, in turn, could subtly coerce the consumer to pay the debt out of the fear of incurring even greater liability. Thus, the demand for attorneys' fees in the State Court Complaint falls squarely within Section 1692e's general prohibition against "false, deceptive, or misleading representation[s]," as well as its specific prohibition against "false representation[s] of ... compensation which

14

may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(A). In so holding, the Court joins the majority of courts that have considered this issue

*Samms I*, 2015 WL 4079424, at *3.

It is undisputed that the verified complaint stated Abrams "demands judgment against [Mr. Samms for]…attorney's fees of this action."  Pl. 56.1 ¶¶41.  It further undisputed that Abrams had no right in law or contract for attorney's fees when it filed suit. Pl. 56.1 ¶¶37-46. Therefore, Plaintiff is entitled to summary judgment as a matter of law for Defendant's said violation of the FDCPA, 15 U.S.C. § 1692e (general prohibition on "any false, deceptive, or misleading representation or means in connection with the collection of any debt"), 1692e(2)(A) ("The false representation of…any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."), and 1692f(1)(The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.")

## C.   DEFENDANT VIOLATED THE GBL BY DEMANDING ATTORNEY'S FEES WHEN NONE WERE ALLOWED

Under the GBL, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful". N.Y. GBL § 349(a). A properly pleaded GBL claim requires proof of three elements: 1) a deceptive act that was "consumer-oriented"; 2) a deceptive act that was misleading in a "material" way; and 3) an injury that the plaintiff suffered "as a result of the deceptive act." *Stutman v.Chemical Bank,* 95 N.Y.2d 24, 29 (2000) (citations omitted).

In *Samms II,* this court held that Plaintiff's operative complaint alleges sufficient facts, taken as true, to prove that Defendant's deceptive act—demanding attorney's fees when none were due under contract or by law—was "consumer oriented" pursuant to the GBL:

Plaintiff's motion seeks leave to file a third amended complaint. In particular, based on plaintiff's counsel's review of publicly, electronically available lawsuits filed by Abrams between October 2011 and May 2015, see Plaintiff's Memorandum of Law in Support of His Motion to Amend the Complaint, at 10–12, ECF No. 26, the amended complaint would allege that thirty-six of these forty-nine cases sought attorneys' fees when none appeared to be allowed by contract or law. *Id.* at 11. The amended complaint would further allege that more lawsuits filed by Abrams are not available electronically and that a majority of the "hundreds" of lawsuits filed by Abrams may reasonably be inferred to include baseless demands for attorneys' fees. *Id.* Finally, the amended complaint would allege that these lawsuits collectively have an impact on consumers of medical services. *Id.* *3

The purpose of these additional allegations is to revive plaintiff's dismissed claim under Section 349 of the GBL, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." The Court dismissed this claim because plaintiff had failed to "demonstrate that the [challenged] acts or practices [had] a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y.1995); see Mem. Order at 11, ECF No. 21. The Court should grant plaintiff's motion only if the additional allegations would cure this defect-that is, if his amendments would not be "futile." See *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008); *Bank of New York v. Sasson*, 786 F.Supp. 349, 352 (S.D.N.Y.1992).

Plaintiffs proposed amendments would not be futile. Indeed, several courts have previously concluded that practices similar to those in the new allegations support claims under Section 349. See, e.g., *Campbell v. MBI Associates, Inc.*, 2015 WL 1543215 at *18 (E.D.N.Y.2015); *Fritz v. Resurgent Capital Services, LP*, 955 F Supp.2d 163, 173–74 (E.D.N.Y.2013); *Diaz v. Portfolio Recovery Associates*, 2012 WL 1882976 at *1 (E.D.N.Y.2012); *Sykes v. Mel Harris and Associates, LLC*, 757 F.Supp.2d 413, 428 (S.D.N.Y.2010).

*Samms II*, 2015 WL 6437493, at *2-3.

Indeed, the facts which have emerged in subsequent discovery show that Abrams routinely filed collections lawsuits against consumers, including Mr. Samms, demanding judgment for attorney's fees in the "wherefore" clause of the complaint, when none were allowed by contract or law. Pl. 56.1 ¶¶42-44. Between April 8, 2012 to present, Abrams filed approximately 147 collection lawsuits against consumers, including Mr. Samms, demanding judgment or attorney's fees in the "wherefore" clause of the complaint, when none were allowed by contract or law. *Id.* at ¶43. Between April 8, 2014 and December 8, 2015, Abrams filed approximately 93 collection lawsuits against consumers, including Mr. Samms, demanding

judgment or attorney's fees in the "wherefore" clause of the complaint, when none were allowed by contract or law. *Id.* at ¶44.

Therefore Abrams' conduct towards Plaintiff was clearly consumer oriented because that same conduct (demanding fees when none were due by contract or law) affected the consuming public at large and was not limited to the" Plaintiff at hand. *Midland Funding, LLC v. Giraldo*, 39 Misc. 3d 936, 961 N.Y.S.2d 743, 752 (Dist. Ct. 2013). *See also Sykes v. Mel Harris and Assoc, LLC. 757 F.Supp.2d 413 (S.D.N.Y 2010)* (debt buyers' and debt collection attorneys' who regularly submitted false affidavits of service and false affidavits of merit in their debt collection lawsuit engaged in consumer oriented conduct in violation of the GBL)*; Diaz v. Portfolio Recovery Services Assoc. LLC., 10 CV 3920* MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012)(debt buyers' and debt collection attorneys' regularly filing time barred lawsuits without meaningful attorney review is consumer oriented conduct in violation of the GBL).

Further, the conduct (demanding fees when none were due by contract or law) was deceptive to the reasonable (lay) consumer under the GBL for the same reasons this Court already held Defendant's conduct is misleading to the least sophisticated consumer under the FDCPA.

> [A]n unsophisticated consumer reading the State Court Complaint could be left with the false impression that Abrams was legally entitled to recover an award of attorneys' fees in addition to the amount of the debt allegedly owed. This false impression, in turn, could subtly coerce the consumer to pay the debt out of the fear of incurring even greater liability.

*Samms I,* 2015 WL 4079424at * 3.

This Court's reasoning is analogous to that of the *Giraldo* court, which held that a debt collector's false representation in a pleading was materially misleading to a reasonable consumer under the GBL:

> If [the debt collector] commenced an action against [the consumer] without any valid factual basis, predicated upon false allegations and knowing misrepresentations, and backed by an attorney's Rule 130 certification, a finder of fact could well conclude that such actions would likely mislead a reasonable consumer. A consumer, unschooled in the law, could be readily deceived into believing that the plaintiff would not be bringing the lawsuit unless it either possessed evidentiary proof of the claim, or could easily obtain such proof. If neither is true, it provides a sound basis for finding a consumer-oriented deception.

*Giraldo,* 961 N.Y.S.2d at 745.

Therefore, like the reasonable consumers in *Giraldo*, reasonable consumers of medical debt, like the pertinent consumers in the case at bar, would be deceived by Defendant's improper demand for attorney's fees because they "could be readily deceived into believing that the plaintiff would not be bringing the lawsuit unless it either possessed evidentiary proof of the claim, or could easily obtain such proof". *Giraldo,* 961 N.Y.S.2d at 745.

Moreover, improperly seeking attorney's fees in the context of nursing home debt is particularly misleading and confusing because medical consumers cannot easily assess the value of services rendered to them, nor easily verify the value of debts sought from them, leaving them particularly vulnerable to misrepresentations and improper claims for fees.

In addition, by demanding judgment for attorney's fees when none are allowed, Abrams deceives consumers to believe that they may incur additional amounts for Abrams' attorney's fees if they challenge the collection lawsuit than if they do not. Therefore, this misrepresentation may make consumers less likely to challenge the collection lawsuit, and more likely to default or to pay the debt.

This is especially true given that the types of debt collection lawsuits appear to be for putative medical debts, primarily putative nursing home debts. Generally, when a consumer incurs a debt, she knows the item she is purchasing and the cost of that item. This is not true for medical debts. In medical debts, the bills are issued from the provider to the

insurance carrier. The cost of the same service varies by who the payer is (*e.g.* a private insurer, Medicaid, or an uninsured consumer), rather than the nature of the service itself. The cost to the consumer of the same exact service would vary dramatically based upon whether there is an exclusion in coverage, whether the deductible has been reached, whether the provider properly and timely submitted the claim to the insurance carrier, or for a host of other reasons, most unknown to the consumer.

Therefore, even more so than consumer sued for other types of debts, consumers sued by Abrams for putative medical debts would have little way of knowing if the amount claimed due in the complaint was even remotely accurate.

That is certainly the case for Mr. Samms. He had private insurance that should have covered all – or almost all – of the $21,000.00 in nursing home charges sought by Abrams.

As such, Abrams demand for attorney's fees when not allowed by law are contract is particularly pernicious as consumers with the least knowledge of the accuracy of the debt are the most discouraged from challenging the accuracy of the debt, again because those consumers would be afraid that the challenge would increase the attorney's fees to be awarded in judgment for Abrams.

It would be up to the jury to decide whether this Abrams knew it had no right to attorney's fees when it made a demand for judgment including attorney's fees. It will also be up to the jury to determine whether Abrams makes the demand for judgment including attorney's fees for the specific purpose of discouraging consumers from challenging the collection litigation and to pressure a consumer to pay more than she otherwise might because of the threat

of attorney's fees. It will be up to the jury if Abram's conduct is a business decision, and perhaps a profitable business decision.

Last, there is no issue of material fact that Plaintiff suffered an injury from Defendant's conduct (demanding fees when none were due by contract or law). Although "actual" injury must be proven in order to recover under the GBL, it need not be "pecuniary harm." *Stutman*, 95 N.Y.2d at 28-32 (2000)(citations omitted).

Defendant's actions (filing in a distant venue and seeking attorney's fees) caused Mr. Samms damages. Pl. 56.1 ¶¶48-54. In particular, Mr. Samms felt frustrated responding to the collection lawsuit's "baseless allegations". *Id.* at ¶52. Mr. Samms was also annoyed by the allegations in the collection lawsuit. *Id.* at ¶53. Mr. Samms felt anguish seeing the amounts Defendant sought to collect in the collection lawsuit (including the demand for attorney's fees"). *Id.* at ¶54.

Further, ruling on Defendant's motion to dismiss for lack of subject matter jurisdiction, this Court has already noted:

> Defendant claims that Samms's deposition testimony shows that none of his ailments is traceable to defendant's FDCPA violations and that he has not received any treatment for his alleged emotional distress. Defendant Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, & Wolf, LLP's Reply Memorandum of Law in Support of Motion to Dismiss at 5–10, ECF No. 38 (quoting pages of Samms's deposition). But the full deposition, in the Court's view, makes clear that Samms is asserting that the debt collection caused him emotional distress. Declaration of Anthony Genovesi, Jr., dated Sept. 14, 2015, Ex. I 75:17–76:2. If it credited such assertion, a reasonable juror could easily conclude that it warranted damages for more than $6,000.

*Samms II*, 2015 WL 6437493, at *2.

As such, because there are no issues of material fact, this Court should rule as a matter of law that Abrams violated the GBL by demanding attorney's fees from Plaintiff when none were due.

## V.     CONCLUSION

For these reasons, Plaintiff prays for the court to enter summary judgment on his behalf and to allow this case to proceed to trial solely on the issue of damages.

Dated: Brooklyn, New York

> Respectfully submitted,
> */s/*
> Ahmad Keshavarz
> ATTORNEY FOR PLAINTIFF
> The Law Office of Ahmad Keshavarz
> 16 Court St., 26th Floor
> Brooklyn, NY 11241-1026
> Phone: (718) 522-7900
> Fax:    (877) 496-7809
> Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Anthony Joseph Genovesi , Jr., Esq.
> Attorney for Defendant
> Abrams, Fensterman, Fensterman,
> Eisman, Formato, Ferrara & Wolf, LLP
> 1111 Marcus Avenue, Suite 107
> Lake Success, NY 11042
> Fax: (516) 328-6638
> Email: agenovesi@abramslaw.com

Dated:  Brooklyn, NY
December 9, 2015
 /s/
Ahmad Keshavarz

21